IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PRESCILLA CAMARENA,**

    **Plaintiff,**

vs.                                                                                **No. CIV 03-1438 RB/WDS**

**VALENCIA COUNTY SHERIFF'S**
**DEPARTMENT, VALENCIA**
**COUNTY, and LT. GARY HALL,**

    **Defendants.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendants' Motion for Summary Judgment (Doc. 3), filed December 24, 2003. Camarena filed a complaint that alleged employment discrimination, harassment, and retaliation based on race, national origin, and disability in the Thirteenth Judicial District, County of Valencia, State of New Mexico. On December 17, 2003, Defendants removed the matter to this court pursuant to 28 U.S.C. § 1441(b). Jurisdiction is founded upon 28 U.S.C. § 1331. Having considered the briefs of the parties and being otherwise fully advised, I find that the motion should be granted as to Plaintiff's (Camarena's) 42 U.S.C. § 1981(a) claim and Title VII retaliation claim, and denied as to her Title VII discrimination and Americans with Disabilities Act discrimination and retaliation claims.

**I. Background.**

In January 1985, Camarena was hired to work as a dispatcher by the Valencia County Sheriff's Department. (Compl. ¶ 3.) The communications department consisted of seven female employees; Camarena was the only Hispanic. (Compl. ¶ 4.) Four of the dispatch office employees

smoked in the work area. (*Id.*) Camarena has submitted a letter dated January 7, 1993, from her supervisor, Carole Row, and Sheriff Anthony Ortega, stating that Camarena had been promoted to the position of Assistant Chief of Communications and that she would be the acting supervisor when Row was out of the office. (Pl. Ex. 1 ¶ 8; Pl. Ex. 2.)

In January 2003, newly-elected Sheriff Richard Perea appointed William Martinez as his Undersheriff. (Pl. Ex. 1 ¶¶ 5-7.) Camarena was introduced to Martinez about one week after he was appointed. (*Id.*) Sometime after their first meeting, Camarena informed Martinez that she was Assistant Chief of Communications. (Pl. Ex. 1 ¶¶ 7; 11.) Martinez told Camarena that he had not heard of that position, but that he would ask around about it. (Pl. Ex. 1 ¶ 11.)

Martinez states that he had previously reviewed the organizational chart and that Camarena was not identified as a supervisor. (Def. Ex. A ¶ 4.) Additionally, the documentation in the sheriff's department did not list her as a supervisor, and the personnel department told him that they had no paper work indicating that she was a supervisor. (Def. Ex. A ¶ 4.) Martinez made inquiries as to Camarena's status, but he did not demote her and did not reduce or modify her rate of pay. (Def. Ex. A ¶ 5.) Camarena states that, during a meeting in early 2003, Martinez omitted her from the chain of command and that she found the omission humiliating. (Pl. Ex. 1 ¶ 14.) Because Martinez never acknowledged her status as a supervisor, Camarena maintains she was demoted. (Pl. Ex. 1 ¶ 12.) She does not dispute that her rate of pay has remained the same.

Camarena complained about smoking in her work area on numerous occasions, but the sheriff's department took no action. (Compl. ¶ 5; Pl. Ex. 1 ¶ 16.) In 2002, Camarena's husband sent a letter to the former sheriff, Juan Julian, notifying him that second-hand smoke in the dispatch area was making Camarena sick. (Pl. Ex. 1 ¶ 16; Pl. Exs. 3-4.) Copies of the letter were sent to Carole

2

Row and to Carol Anaya in the County's Human Resources Department. (Pl. Ex. 1 ¶ 17.) Camarena's co-workers stopped talking to her after she complained about their smoking. (Compl. ¶ 6.)

In response to Camarena's husband's letter, Sheriff Julian directed Camarena to submit medical documentation of her respiratory problem. (Pl. Ex. 1 ¶ 19.) Camarena submitted a letter, dated August 6, 2002, from Dr. Kazi Saleheen, M.D., stating that she needed to be in a non-smoking environment due to her health conditions. (Pl. Ex. 5.)

Camarena asserts that Defendants took no remedial steps on the smoking situation, and that she developed asthma. (Pl. Ex. 1 ¶ 22.) Martinez states that, as soon as he was appointed and learned of Camarena's complaints, he made sure that the County's no smoking policy was strictly enforced. (Def. Ex. A ¶ 6.) Camarena admits that, on January 30, 2003, Sheriff Perea issued a memo prohibiting smoking in the dispatch area. (Pl. Ex. 1 ¶ 23.) Camarena was hospitalized due to health problems caused by smoke in her workplace. (Pl. Ex. 1 ¶ 36.)

On February 11, 2003, Defendant Hall issued a written warning to Camarena. (Def. Ex. C.) The warning was in response to Camarena secretly taping a telephone conversation between Carole Row and a co-worker in the dispatch office. (Def. Ex. C.) Camarena states that the conversation included derogatory remarks mocking her and implying acts of violence against her. (Pl. Ex. 1 ¶ 26.) Camarena contends that the reprimand was issued in retaliation for Camarena's complaints about smoking and lack of breaks during the work day. (Compl. ¶ 9.) Camarena additionally complains that she was subjected to a hostile work environment because of her complaints about smoking and lack of breaks. (Compl. ¶ 10.)

While Camarena was hospitalized, Camarena's husband asked Carole Row whether

Camarena was eligible for donated sick leave. (Pl. Ex. 1 ¶ 37.) Row told him she would find out and call him back. (Pl. Ex. 1 ¶ 38.) Camarena's husband asked Row to call him on his cell phone, but she left a message on his home answering machine instead. (Pl. Ex. 1 ¶ 39.) In the message, Row advised Camarena's husband that Camarena needed to submit a letter requesting donated leave to Carol Anaya in the Human Resources Department. (Pl. Ex. 1 ¶ 41.)

Camarena called Anaya the next day. (Pl. Ex. 1 ¶ 42.) Anaya told Camarena that Anaya did not know that Camarena was ill and in the hospital and that Row had never called Anaya. (Pl. Ex. 1 ¶ 45.) Camarena submitted a letter requesting donated sick leave. (Pl. Ex. 1 ¶ 47.) Anaya prepared a memo from the County Manager, James Fernandez, to all county employees, advising them that Camarena needed sick leave donations and outlining the procedure for donating leave. (Def. Ex. B.) Camarena avers that Anaya did not write the letter on her own accord and that Camarena had to request donated time. (Pl. Ex. 1 ¶ 49.) None of Camarena's co-workers in dispatch donated leave. (Pl. Ex. 1 ¶ 48.)

When Camarena was released from the hospital, she was put in contact with an individual named Paul Cruz who acted as her advisor and spoke on her behalf to Fernandez and Anaya. (Pl. Ex. 1 ¶ 50.) Cruz arranged a meeting with Fernandez and Anaya in an effort to resolve Camarena's grievance. (Pl. Ex. 1 ¶ 51.) At the meeting, they discussed transferring Camarena out of the dispatch department at the same rate of pay and compensating her for harm inflicted, as well as pain and suffering. (*Id.*)

After her physician released her to return to work, Camarena informed Anaya that she did not want to return to the dispatch department. (Pl. Ex. 1 ¶ 54.) Camarena was assigned to work in the county manager's office until further notice. (Pl. Ex. 1 ¶ 55.) In July 2003, Anaya advised Camarena

4

that there were two openings; one with the Planning and Zoning Department and one with the Animal Control Department. (Pl. Ex. 1 ¶ 57.) Camarena chose the Animal Control Department. (Pl. Ex. 1 ¶ 60.)

The Animal Control Department is open on Tuesdays through Saturdays. (Def. Ex. B ¶ 8.) Camarena requested that she be permitted to work Mondays through Fridays, so that she could spend Saturdays with her husband. (Pl. Ex. 1 ¶ 61.) Her request was granted. (Pl. Ex. 1 ¶ 62.) Camarena works at the county manager's office on Mondays and works at the Valencia County Animal Shelter on Tuesdays through Fridays. (Pl. Ex. 1 ¶ 63.) Her rate of pay has not changed as a result of her transfers. (Def. Ex. B ¶ 7.)

Camarena alleges that she was demoted from her position as Assistant Chief of Communications. (Compl. ¶ 11.) She additionally alleges that Defendants were aware that she suffered from respiratory ailments and mental distress due to smoking in her work area, but Defendants failed to accommodate her. (Compl. ¶¶ 12, 13.) Camarena alleges that she suffered from respiratory problems, mental anguish, and emotional distress due to the second-hand smoke. (Compl. ¶ 14.)

The Complaint is brought to "remedy discrimination on the basis of national origin, race and disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. §§ 2000e-2003-17, the Americans with Disabilities Act of 1990, 42 U. S. C. §12101, *et seq*. and pursuant to the Civil Rights Act of 1999, 42 U.S.C.§1981(a)." (Compl. ¶ 1.) In Count I, she alleges that Defendants have discriminated against her in her employment on the basis of her race and national origin. (Compl. ¶¶ 16-18.) In Count II, she alleges that Defendants retaliated against her in violation of Title VII by reprimanding and demoting her. (Compl. ¶¶ 19-21.) In Count III, she

alleges that she is an individual with a disability or that she was regarded as an individual with an impairment, and that Defendants discriminated against her on the basis of her disability. (Compl. ¶¶ 22-24.)

In their motion for summary judgment, Defendants argue that Hall is entitled to qualified immunity; the undisputed facts fail to support a 42 U.S.C. § 1981(a) claim; Camarena is unable to establish a prima facie case of discrimination or retaliation; and Camarena is unable to establish that she is disabled within the meaning of the ADA.

Camarena responds that Defendants have failed to offer a business reason for her demotion; she has established a prima facie case of national origin discrimination, retaliation and disability discrimination; and that discovery is necessary.

Defendants reply that Camarena has failed to demonstrate an issue of material fact; Hall is entitled to qualified immunity; race or national origin did not play a role in the demotion; Camarena did not suffer an adverse employment action; and Camarena did not engage in protected activity.

**III. Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

7

## IV. Analysis.

### A. Whether Defendant Hall is entitled to qualified immunity.

Defendants assert that Defendant Hall is entitled to qualified immunity. The defense of qualified immunity applies to 42 U.S.C. §1981(a) claims against government officers, such as Hall, when sued in their individual capacities. *Patrick v. Miller*, 953 F.2d 1240, 1249-50 (10th Cir. 1992). Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The Supreme Court has noted that, although § 1981(a) "on its face relates primarily to racial discrimination in the making and enforcement of contracts," the statute provides a remedy against employment discrimination on the basis of race as well. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971-72 (10th Cir. 1979) (allegation that employer discriminated against plaintiff based on his Mexican-American descent was sufficient to state cause of action under § 1981(a)). Camarena contends that Hall retaliated against her for complaining about smoke in her work area and lack of breaks during the work day. Although these allegations do not correspond to a §1981(a) claim, the defense of qualified immunity has been raised, and it will be analyzed.

A government official is entitled to qualified immunity from civil damages when his or her

"conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis consists of two sequential inquiries. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must inquire whether "[t]aken in the light most favorable to the party asserting the injury . . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201.

If the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the officer's alleged unlawful conduct. *Id*. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

Camarena alleges that she received a letter of reprimand from Defendant Hall for failing to follow the chain of command regarding a tape recording of a conversation that took place in the dispatch department. (Compl. ¶ 7.) Camarena alleges that Hall issued the reprimand in retaliation for her complaint regarding smoking in the work area and lack of breaks during the day. (Compl. ¶ 9.) Camarena has submitted no facts tending to show that Hall issued the reprimand for reasons relating to her race or national origin. None of her submissions indicate that Hall took any actions that discriminated against her on the basis of her race or national origin, or that Hall purposefully discriminated against her on the basis of her race or national origin in violation of § 1981(a). Taken in the light most favorable to Camarena, the facts of record do not show that Hall's conduct violated a constitutional right cognizable under § 1981(a). Camarena has failed to satisfy her burden in response to Hall's assertion of qualified immunity. Because Hall is entitled to qualified immunity,

9

the motion for summary judgment should be granted as to Hall.

**B.    Whether Camarena's § 1981(a) claim is precluded by Title VII.**

Qualified immunity is not necessary in this case because, based on the facts alleged in the Complaint, any §1981(a) claim would be precluded by Title VII. Although not argued by Defendants, a § 1981(a) claim cannot go forward together with a Title VII claim unless the § 1981(a) claim has a legal basis independent from the Title VII claim. *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 861 (10th Cir. 2000) (Seymour, C.J., concurring); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991). Where a plaintiff has alleged constitutional violations in addition to employment discrimination, courts have found an independent legal basis for a § 1981(a) claim. *See e.g. Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir. 1992) (holding §1981(a) claim could proceed because plaintiff had alleged due process and equal protection violations in addition to employment discrimination).

In this case, Camarena alleges only employment discrimination and retaliation. Because Camarena has advanced no independent legal basis to support a § 1981(a) claim, such a claim is precluded by Title VII, regardless of whether Hall is entitled to qualified immunity. Defendants' motion for summary judgment should be granted as to the §1981(a) claim.

**C.    Whether Camarena has established a prima facie case of race or national origin discrimination in violation of Title VII.**

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of race or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging discrimination in violation of Title VII may prove intentional discrimination through direct evidence, or through indirect evidence using the

analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Because there is rarely direct evidence of discrimination or retaliation, a plaintiff must often rely on indirect evidence. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620-621 (10th Cir. 1994). In this case, Camarena relies on indirect evidence of discrimination.

A plaintiff relying on indirect evidence has the initial burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802-804. If the plaintiff establishes a prima facie case, then the defendant must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. *Id.* The plaintiff then bears the ultimate burden of demonstrating that the defendant's stated reason is, in fact, a pretext for unlawful discrimination. *Id.* at 804.

The Supreme Court has emphasized that *McDonnell Douglas* was not intended to set "an inflexible rule." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978). The ultimate question is whether the plaintiff has shown "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Furnco*, 438 U.S. at 576.

Camarena alleges that she was demoted on the basis of her race or national origin. To establish a prima facie case of a discriminatory demotion, Camarena must show that she was: (1) "within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, and (4) that the job from which she was demoted was not eliminated." *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). Defendants argue that Camarena is unable to satisfy the adverse employment action component of the prima facie case.

Although the Tenth Circuit liberally construes the term "adverse employment action," its

existence is determined on a case by case basis and does not extend to mere inconvenience or an alteration of job responsibilities. *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). The employer's action must entail a significant change in employment status such as "firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Aquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In order to qualify as an adverse employment action, the action must "adversely affect [the employee's] status as an employee." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998).

Defendants argue that Camarena is unable to demonstrate an adverse employment action because she was not demoted, her pay was not decreased, and she voluntarily sought a transfer out of the dispatch office. Camarena contends that Martinez's failure to acknowledge her as a supervisor and his omission of her from the chain of command during a meeting humiliated her. (Pl. Ex. 1 ¶¶ 12-15.) Camarena has submitted a letter that promoted her to the position of Assistant Chief of Communications in 1993. (Pl. Ex. 2.) When Martinez took office, he did not recognize Camarena as Assistant Chief of Communications. (Def. Ex. A.) While Camarena does not dispute that her rate of pay remained unchanged, the record is silent as to whether her job responsibilities and working conditions changed as a result of her demotion.

The threshold for showing an adverse employment action is not high. As an example, in *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997), negative evaluations were sufficient to satisfy the second element of the prima facie case. *Id*. at 1395. In *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993), reassignment to a different office over plaintiff's objections was sufficient to establish an adverse employment action. There has been no discovery

in this case. As the record now stands, there are questions of material fact as to whether Camarena suffered an adverse employment action based on her race or national origin. Summary judgment on her Title VII discrimination claim would be inappropriate under these circumstances.

**D.      Whether Camarena has established a prima facie case of retaliation in violation of Title VII or the ADA.**

Defendants argue that they are entitled to summary judgment on Camarena's retaliation claim because she did not engage in protected activity and she did not suffer an adverse employment action. In Count II, Camarena alleges that Defendants retaliated against her in violation of Title VII. Title VII prohibits retaliation against employees for asserting their rights under Title VII, providing that "[i] t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The Complaint contains no allegations that Camarena complained about discrimination based on her national origin or race before or at the same time of the alleged retaliation. Because she does not allege that she engaged in protected activity within the meaning of Title VII, Defendants are entitled to summary judgment on the Title VII retaliation claim.

Although not expressly pleaded by Camarena, the Complaint could be read to allege an ADA retaliation claim. The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. §12203(a) (2003). Retaliation claims are treated the same whether they are brought under Title VII or the ADA. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.

1997). In order to establish a prima facie case of retaliation under the ADA, Camarena must show that (1) she engaged in an activity protected by the statute; (2) she was subjected to an adverse employment action subsequent to, or contemporaneous with, the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

Informal complaints to superiors may qualify as protected activity. *See Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999) (interpreting Title VII). An employee does not have to show that the conduct she opposed was actually in violation of the ADA as long as she had a good faith, objectively reasonable belief that the underlying challenged actions of the employer violated the ADA. *Selenke*, 248 F.3d at 1264. Camarena's complaints about the detrimental health effects of her co-workers' smoking qualify as protected activity within the meaning of the ADA.

Defendants argue that they are entitled to summary judgment on the retaliation claim because Camarena has failed to establish a prima facie case because she has not shown an adverse employment action. Camarena alleges that Defendants retaliated against her after she complained about smoking in her work area. On July 5, 2002, Camarena's husband complained in writing that smoke in Camarena's work area was detrimental to her health. (Pl. Ex. 3.) On August 6, 2002, Camarena submitted a letter from Dr. Saleheen to Sheriff Julian that restricted her to a non-smoking environment. (Pl. Ex. 5.) After she complained about the smoking, Camarena's co-workers became hostile toward her. (Pl. Ex. 1 ¶ 26.)

In January 2003, Camarena complained to Martinez that she did not like smoking in the work area. (Def. Ex. A ¶ 6.) During January 2003, Martinez decided not to recognize Camarena as a

supervisor. (Pl. Ex. 1 ¶ 13.) On February 11, 2003, Camarena received a written warning for failure to follow the chain of command when she recorded a conversation between two co-workers. (Def. Ex. C.) Camarena asserts that the reprimand was issued in retaliation for her complaints about her co-workers' smoking and lack of breaks during the work day.

As discussed in reference to the discrimination claim, the threshold for an adverse employment action is not high. Written warnings qualify if they undermine or jeopardize an employee's position. *Roberts v. Roadway Exp., Inc.,* 149 F.3d 1098, 1104 (10th Cir. 1998); *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.1996). Co-worker hostility and harassment, if sufficiently severe, qualify as adverse employment actions. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998). After she complained about smoking in the workplace, Camarena received a written warning and was the target of co-worker hostility. Camarena has established the second element of her prima facie case of retaliation in violation of the ADA. Summary judgment would be inappropriate under these circumstances. Defendants may challenge Camarena's ADA retaliation claim in a subsequent motion for summary judgment.

**E.     Whether Camarena is disabled within the meaning of the ADA.**

Defendants argue that they are entitled to summary judgment on Camarena's ADA claim because she has failed to provide any documentation establishing a disability affecting a major life activity and that they accommodated her health condition by transferring her.

The ADA defines disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; or (C) being regarded as having a physical or mental impairment that substantially limits one or more

15

of the major life activities of such an individual. *See* 42 U.S.C. § 12102(2)(A-C). Camarena alleges that she has a disability, as defined by subsections A and C. (Compl. ¶ 23.)

In order to demonstrate a disability within the meaning of the ADA, a plaintiff must show that an impairment substantially limits at least one major life activity. *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1155 (10th Cir. 2003). This definition contains three elements. *Id*. First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities. *Id.* at 1156. A plaintiff must specifically plead or prove at trial the impairments and the major life activities that she asserts are at issue. *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir. 1999).

Camarena alleges that she suffered from respiratory ailments, mental anguish, and emotional distress due to smoke in her workplace. (Compl. ¶ 12; 14.) These impairments may implicate the major life activities of working and breathing. *See Selenke*, 248 F.3d at 1256-59 (recognizing that working and breathing constitute major life activities). Camarena submitted a note to Sheriff Julian from Dr. Saleheen stating that she needed to work in a non-smoking environment. (Pl. Ex. 5.) Camarena was hospitalized, took extended leave, and requested a transfer due to her respiratory condition and hostility from her co-workers. (Pl. Ex. 1 ¶¶ 36; 54.) These facts refute Defendants' assertion that Camarena never provided them with any documentation of her purported disability. Material issues of fact remain in dispute as to whether Camarena is disabled within the meaning of the ADA. Summary judgment would be inappropriate under these circumstances.

Defendants assert that Camarena's ADA claim is barred because they transferred her after she complained, they notified employees that Camarena was in need of donated leave, and they granted

her modified work schedule request. Camarena responds that Defendants delayed taking any action until she was hospitalized. The Tenth Circuit has recognized that an employer's delay in providing reasonable accommodation may violate the ADA. *Selenke*, 248 F.3d at 1262. Issues of material fact remain in dispute. As the record now stands, summary judgment would be premature on this issue.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 3), filed December 24, 2003, is **GRANTED** as to the § 1981(a) claim and Title VII retaliation claim, and **DENIED** as to the Title VII discrimination and ADA discrimination and retaliation claims.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**