IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRESCILLA CAMARENA,

    Plaintiff,

vs.    NO. CIV. 03-1438 RB/WDS

VALENCIA COUNTY SHERIFF'S DEPARTMENT,
VALENCIA COUNTY, and LT. GARY HALL,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Valencia County Sheriff's Department and Valencia County's ("Valencia County") second motion for summary judgment. The Court previously granted summary judgment for Valencia County on some of Plaintiff Prescilla Camarena's ("Ms. Camarena") claims. The Court will now rule on the remaining claims: 1) Ms. Camarena's ADA discrimination and retaliation claims; and 2) Ms. Camarena's Title VII discrimination claim. For the reasons that follow, the Court **GRANTS** summary judgment for Valencia County on Ms. Camarena's ADA and Title VII discrimination claims, and **DENIES** Valencia County's motion on Ms. Camarena's retaliation claim under the ADA.

### II. Background and procedural history.

In January 1985, the Valencia County Sheriff's Department hired Ms. Camarena to work as a dispatcher in the Communications Department. (Compl. ¶ 3.) At that time the Communications Department consisted of seven female employees and Ms. Camarena was the only Hispanic. (Compl. ¶ 4.) Four of the dispatch office employees smoked in the work area. *Id.* Ms. Camarena



submitted a letter dated January 7, 1993, from her supervisor, Carole Row and then-Sheriff Anthony Ortega, indicating that she had been promoted to the position of Assistant Chief of Communications and that she would act as supervisor when Carole Row was out of the office. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 8, Ex. 2.)

In January 2003, newly-elected Sheriff Richard Perea appointed William Martinez ("Mr. Martinez") as his Undersheriff. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶¶ 3-4.) Mr. Martinez had previously reviewed the organizational chart, which did not identify Ms. Camarena as a supervisor. (Defs.' Reply to Pl.'s Resp. to Second Mot. for Summ. J. Ex. H ¶ 4.) Ms. Row's supervisory position as Chief of Communications is not listed on the organizational chart either. (Defs.' Reply to Pl.'s Resp. to Second Mot. for Summ. J. Ex. 1 organizational chart.) Ms. Camarena, however, did produce a letter from the Personnel Department that listed her job title as Assistant Chief of Communications as well as a letter from Sheriff Ortega dated in 1993, which congratulated her on her promotion to Assistant Chief of Communications. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 2; Pl.'s Resp. to Defs.' Second Mot. for Summ. J. Ex. 7). Ms. Camarena argues that Mr. Martinez refused to recognize her as a supervisor. (Pl.'s Resp. to Defs.' Second Mot. for Summ. J. at 11.)

Ms. Camarena maintains that she was demoted "because she complained about smoking in the dispatch area." (Pl.'s Resp. to Defs.' Second Mot. for Summ. J. at 11.) She does not dispute that her rate of pay has remained the same. Ms. Camarena complained about smoking in her work area on numerous occasions. (Compl. ¶ 5; Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 16.) On July 5, 2002, Ms. Camarena's husband sent a letter to the previous sheriff, Juan Julian, notifying him that second-hand smoke in the dispatch area made her sick. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex.

2

3.) Ms. Camarena also submitted a letter, dated August 6, 2002, from Dr. Kazi Saleheen, M.D., stating that she needed to be in a non-smoking environment due to her health conditions. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 5.) Ms. Camarena went to the hospital due to health problems allegedly caused by smoke in her workplace. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1. ¶ 36.)

Mr. Martinez states that as soon as he learned of Ms. Camarena's complaints about smoking he strictly enforced Valencia County's no-smoking policy. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1. ¶ 23.) Ms. Camarena admits that, on January 30, 2003, Sheriff Perea issued a memo prohibiting smoking in the dispatch area. *Id.* Moreover, Ms. Camarena admits that she takes medication, specifically steroids and inhalers, to combat her asthma. (Dep. of Prescilla Camarena.) Ms. Camarena can not recall the last time she had any difficulty breathing since Valencia County transferred her from the Sheriff's department and she began taking her medication. *Id.*

On February 11, 2003, Lieutenant Gary Hall, one of Ms. Camarena's supervisors, issued a written warning to Ms. Camarena for failing to follow the chain of command when she secretly taped a telephone conversation between Carole Row and a co-worker in dispatch. (Compl. ¶ 7.) Although Ms. Camarena acknowledges that the proper procedure for reporting grievances was to speak with her direct supervisors she contends that the reprimand was issued in retaliation for her complaints about smoking and a lack of breaks during the work day. (Compl. ¶ 9.)

In an effort to honor Ms. Camarena's wishes to be transferred to a smoke-free work environment, the Sheriff's Department assigned her to work in the County Manager's Office until further notice. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 Ex. 1 ¶ 55.) In July 2003, Carol Anaya advised Ms. Camarena of two job openings: one with the Valencia County Planning and Zoning Department and one with the Valencia County Animal Control Department. (Pl.'s Resp. to Defs.'

3

Case 2:03-cv-01438-RB-WDS   Document 46   Filed 12/15/04   Page 4 of 13

Mot. for Summ. J. Ex. 1 Ex. 1 ¶ 57.) Ms. Camarena chose to work at the Animal Control Department, which is open from Tuesday through Saturday. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 60.) Ms. Camarena wanted to work Mondays through Fridays so she could spend Saturdays with her husband. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 61.) Valencia County accommodated her request. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 62.) Ms. Camarena currently works at the County Manager's Office on Mondays and at the Animal Shelter on Tuesdays through Fridays. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 63.) Her rate of pay has not changed as a result of her reassignment. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 1 ¶ 51.)

The Court granted Valencia County's first motion for summary judgment in part and denied it in part. In a memorandum opinion and order issued on May 3, 2004, the Court granted summary judgment for Valencia County with respect to Ms. Camarena's 42 U.S.C. § 1981(a) claim and her Title VII retaliation claim. (Doc. No. 18.) The Court denied Valencia County's motion for summary judgment with respect to Ms. Camarena's ADA discrimination and retaliation claims and her Title VII discrimination claim. *Id.* Valencia County filed a second motion for summary judgment on September 13, 2004 with respect to Ms. Camarena's remaining claims. (Doc. No. 34.)

## III. Analysis.

### A. Standard of review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the nonmoving party in applying this standard. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). A fact is

4

material if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine dispute over a material fact arises if a reasonable jury could find in favor of the nonmoving party based on the evidence presented. *Id.* The movant, however, is entitled to summary judgment if the nonmovant fails to provide sufficient evidence on an essential element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Lastly, where the nonmoving party will bear the burden of proof at trial, that party must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case to survive summary judgment." *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1157-58 (10th Cir. 2002).

### B. Disability discrimination under the ADA.

The Americans with Disabilities Act of 1990 ("ADA") provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). To establish a prima facie case of discrimination under the ADA, an employee must show that he or she: 1) *is disabled within the meaning of the ADA*; 2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and 3) was discriminated against because of the disability. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). The ADA defines disability as:

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment."

5

42 U.S.C. § 12102(2). To fall within this definition, therefore, one must have an actual disability, a record of a disability, or be regarded by their employer as having one. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478.

In *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1257 (10th Cir. 2001), Ms. Selenke alleged that she suffered from the symptoms of sinusitis as a result of the chemicals, smoke and lack of proper ventilation present in the darkroom where she worked. These symptoms included physical problems such as headaches, dizziness, and difficulty breathing. *Id.* The Tenth Circuit held that sinusitis was an impairment and that working and breathing were major life activities for purposes of Subsection (A) of the ADA. *Id.* at 1258. The court then assumed, without ever deciding, that Ms. Selenke presented sufficient evidence that she suffered from a substantial impairment of the major life activity of breathing while working for the defendant in that case. *Id.* at 1259. Similarly, Ms. Camarena complained that she developed asthma and suffered mental anguish and emotional distress from working as a dispatcher for Valencia County. (Compl. ¶ 14.)

However, with respect to Subsection (A) of the ADA the Supreme Court has held that "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." *Sutton*, 527 U.S. at 475. In other words, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-- both positive and negative--must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]." *Sutton*, 527 U.S. at 482. Therefore, "those whose impairments are largely corrected by medication or other devices are not 'disabled' within the meaning of the ADA." *Sutton*, 527 U.S. at 486.

In *Hill v. Steven Motors, Inc.*, No. CIV.A. 02-3415, 2004 WL 958097, at *9 (10th Cir. May

6

5, 2004), the court held that an employee who suffered a stroke was not actually disabled under the ADA. The Tenth Circuit noted that the plaintiff's stroke was an impairment that affected the major life activities of learning, thinking, reasoning, and moving but that the impairment was not substantially limiting. *Id.* at *7. Whether an impairment is substantially limiting is ordinarily a factual question but a judge can evaluate it on a motion for summary judgment. *Id.* The court also noted that "substantial""clearly precludes impairments that interfere in only a minor way with the performance of [major life activities]" and that the word substantially must "be interpreted strictly." *Id.* at *8 (citations omitted). In other words, "to be substantially limited . . . an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives . . . . The impairment's impact must also be permanent or long term." *Id.* (citations omitted). In concluding that the plaintiff's stroke did not substantially limit her ability to learn or move freely, the court cited the plaintiff's deposition in which the following interchange took place: "Q: As we sit here today, do you have any continuing effect from the stroke you had in July of '99? A: No, I would say it is nothing short of a miracle." *Id.* The plaintiff went on to claim that she still had trouble walking but the court reasoned that "[m]erely having an impairment does not make one disabled for purposes of the ADA" and found the plaintiff was not actually disabled under Subsection (A). *Id.* (citations omitted).

In this case, Ms. Camarena admits that she takes medication to combat her asthma. (Dep. of Prescilla Camarena.) Ms. Camarena also admitted in her deposition that she can not recall the last time she had any difficulty breathing since she began taking her medication. *Id.* The following exchange took place at Ms. Camarena' deposition: "Q: And if you take your medication and you stay away from cigarette smoke, can you breathe normally? A: I was fine, yes. Q: So you have no

7

problems breathing as long as you take your medication and you stay away from cigarette smoke? A: Right." *Id.* Because Ms. Camarena's asthma does not substantially limit her ability to breathe, the Court finds that Ms. Camarena is not disabled for purposes of Subsection (A) of the ADA.

Pursuant to Subsection (B) of the ADA, a plaintiff can present evidence of a record of a disability to make out a prima facie case. In *Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1160-61 (10th Cir. 2002), for example, Mr. Rakity alleged that the carpal tunnel impairment to his hands and wrists substantially impaired his ability to work. Mr. Rakity's record of disability included a record of missed work due to surgery, short hospital stays and rehabilitation. *Id.* at 1161. In holding that Mr. Rakity did not produce a sufficient record of a disability, the Tenth Circuit relied on a Second Circuit decision, which held that a recorded impairment was not substantially limiting where a police officer was hospitalized for a month, remained at home for six months, and was restricted to light duty for seven years after returning to work. *Id.* The court noted that despite Mr. Rakity's medical history he was still able to perform several tasks and his employer attempted to identify positions he could work in so that "[u]nder these circumstances . . . Mr. Rakity failed to present a genuine issue of material fact concerning whether he has a 'record of' substantial limitation in the life activities of . . . working." *Id.* at 1162.

In this case, Ms. Camarena's only record of impairment is notes from her doctor and her husband that detailed one hospital visit due to breathing problems, which allegedly resulted from smoking in the dispatch office under Sheriff Julian in 2002. Sheriff Perea and Undersheriff Martinez have strictly enforced the anti-smoking policy and Valencia County allowed Ms. Camarena to transfer to work at the County Manager's Office and the Animal Shelter. Since then, she has not experienced any health problems. Under these facts, it does not appear that Ms. Camarena raised

8

any genuine issues of material fact regarding a record of impairment under Subsection (B) of the ADA.

An individual can be "regarded as" disabled under Subsection (C) of the ADA if: 1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or 2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489. An employer, therefore, "must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* The purpose of this subsection is to protect individuals rejected from a job because of the myths, fears, and stereotypes associated with disabilities. *Id.* at 489-90.

The Tenth Circuit has held that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. *Hill*, 2004 WL 958097, at *9. The court noted that an employee did not raise a genuine issue of material fact when the employer regarded that employee as precluded only from one particular nursing job but that an employee did raise a genuine issue of material fact when she offered evidence that the sheriff perceived her as unemployable in any law enforcement job. *Id.* (internal citations omitted).

Viewing the evidence in the light most favorable to Ms. Camarena, she failed to raise a genuine issue of fact that Valencia County regarded her as unemployable in any department. At most, it could be argued that Valencia County regarded her as precluded from working as a dispatcher in the Communications Department. Yet Valencia County allowed her to transfer to other offices to accommodate her work and scheduling preferences. Since Valencia County never mistakenly believed anything about Ms. Camarena's breathing or mental problems, and never

9

regarded her as unemployable in any particular department. Subsection (C) appears to be inapplicable in this case. The Court, therefore, grants summary judgment for Valencia County on Ms. Camarena's disability discrimination claim under the ADA.

### C. Retaliation under the ADA.

The ADA provides that: "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(a) (2003). In the context of a motion for summary judgment, Ms. Camarena must "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Rakity*, 302 F.3d at 1164. In order to establish a prima facie case of retaliation under the ADA, Ms. Camarena must show that: 1) she engaged in a protected activity; 2) she suffered *an adverse employment action* subsequent to or contemporaneous with the protected activity; and 3) a causal connection existed between the protected activity and the adverse action. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (emphasis added).

In *Selenke*, 248 F.3d at 1252-56, Ms. Selenke, who worked as a licensed radiology technician and mammographer, complained to her supervisors about chemical fumes in the darkroom that affected her breathing. Ms. Selenke suffered from sinusitus, a sinus condition that impaired the major life activities of working and breathing. *Id.* The Tenth Circuit held that her requests for improvements to the ventilation system constituted a protected activity under the ADA. *Id.* Likewise, Ms. Camarena's complaints about smoking would be considered a protected activity under the ADA.

Valencia County, however, argues that Ms. Camarena has failed to show any adverse

employment action. The phrase "adverse employment action" is to be liberally defined. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (internal citations omitted). The Tenth Circuit does not limit adverse employment actions to those actions resulting in a loss of wages or benefits. *Id.* Rather, "we take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Id.* Significant changes in employment status such as "firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" constitutes an adverse employment action. *Id.* Likewise, actions presenting nothing beyond a "mere inconvenience or alteration of responsibilities" do not constitute adverse employment action. *Id.* A reassignment, however, can be an adverse employment action when the employee "has less responsibility, or is required to utilize a lesser degree of skill than [their] previous assignment." *Id.* (internal citations omitted).

Ms. Camarena argues that she suffered several adverse employment actions: 1) Lt. Hall's reprimand in retaliation for her complaints about smoking; 2) her co-workers did not voluntarily donate sick leave to her upon her return from the hospital; 3) Undersheriff Martinez refused to recognize her as an Assistant Chief of Communications and her job responsibilities changed since she was no longer considered a supervisor; 4) she was forced to request a transfer to another department because of the smoking taking place in dispatch. First, negative evaluations may constitute an adverse employment action. *Connor v. Schnuk Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). In this case, Ms. Camarena alleges that she was reprimanded and then demoted for complaining about smoking. Valencia County argues that it warned her not for complaining about smoking but for taping a phone conversation between two of her co-workers, which clearly violated the Sheriff Department's policy of reporting grievances up the chain of command. Ms.

11

Camarena appears to have raised a genuine issue of material fact with respect to this action. Second, the fact that none of her co-workers voluntarily donated sick leave to Ms. Camarena does not amount to an adverse employment action.

Third, although Valencia County claims that Mr. Martinez had no documentation informing him that Ms. Camarena was in fact a supervisor, Ms. Camarena provided a letter from the Personnel Department that acknowledged her promotion to Assistant Chief of Communications. In addition, the record is not clear on whether Ms. Camarena's responsibilities changed when Sheriff Perea was elected. She claims that she was no longer allowed to run the office when Ms. Row was out of town. If she was no longer considered second in command, than her job duties appeared to have changed. Ms. Camarena appears to have raised a genuine issue of material fact about this action. Lastly, Ms. Camarena appears to have raised a genuine issue of material fact as to whether she was essentially forced to request a reassignment due to smoking in the dispatch office. Moreover, the record is not clear on whether she has less responsibility in her new job with the County Manager's Office and the Animal Shelter or whether "a lesser degree of skill" is utilized in her new positions. *Stinnett*, 337 F.3d at 1217. Because a genuine issue of material fact exists with respect to whether Ms. Camarena suffered an adverse employment action, summary judgment is inappropriate with respect to Ms. Camarena's retaliation claim under the ADA.

### D. Title VII discrimination.

Title VII makes it unlawful to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of race or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination on the basis of race or national origin, Ms. Camarena must show that: 1) she was a member of a protected group; 2) *she*

*suffered an adverse employment action*; 3) she was qualified for the position at issue; and 4) that the employer did not eliminate the job from which she was demoted. *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000) (emphasis added). If Ms. Camarena establishes a prima facie case of discrimination, then Valencia County must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Ms. Camarena then bears the ultimate burden of demonstrating that Valencia County's stated reason is a pretext for unlawful discrimination. *Id.* at 804.

Although Ms. Camarena is a Hispanic woman, she has not produced any evidence that she was discriminated against on this basis. She states throughout her pleadings that Valencia County demoted her not because of her ethnicity, but because she complained about her co-workers smoking in the dispatch office. In any event, for the reasons stated above, it does not appear that Ms. Camarena suffered an adverse employment action. It does not appear that Ms. Camarena has met the prima facie case of Title VII discrimination. Summary judgment, therefore, appears to be appropriate with respect to this claim.

**THEREFORE,** Valencia County's second motion for summary judgment will be **GRANTED** in part and **DENIED** in part. It will be **granted** with respect to Ms. Camarena's ADA and Title VII discrimination claims and **denied** with respect to her ADA retaliation claim.

*/s/ Robert Brack*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**